IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| RICKY D. LEWIS,<br><br>        Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | CV 09-36-BU-RFC-CSO<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE |

Plaintiff Ricky D. Lewis ("Lewis") initiated this action to obtain

judicial review of Defendant Commissioner of Social Security's

("Commissioner's") decision denying his application for supplemental

security income ("SSI") under Title XVI of the Social Security Act ("the

Act"), 42 U.S.C. §§ 1381-1383(c).  Pl.'s Complt. (Court Doc. 3) at 1-3.

On September 9, 2009, this case was referred to the undersigned for all

pretrial proceedings (Court Doc. 9).

Now pending before the Court are the parties' cross-motions for

summary judgment (Court Docs. 10 & 17).  For reasons stated below,

the Court recommends that the cause be remanded.

I.   PROCEDURAL BACKGROUND

Lewis filed his SSI application on March 22, 2005, alleging that he has been unable to work since March 7, 2005. Administrative Record ("A.R.") at 304-305. Lewis claimed that he has the following severe impairments: degenerative disease of the lumbar spine, degenerative joint disease of the right upper extremity, left hand tendon damage, osteoarthritis of the spine, diabetes mellitus, hyperlipidemia, hypertension, gastroesophageal reflux disease (GERD), hypothyroidism, an affective disorder characterized by major depression with psychotic features of auditory hallucinations, and a personality disorder characterized by an intermittent explosive disorder / antisocial personality. A.R. at 23; Pl.'s Statement of Uncontroverted Facts (Court Doc. 11) at ¶ 8.

The Social Security Administration ("SSA") denied Lewis's SSI application initially and upon reconsideration. A.R. at 286-93. An Administrative Law Judge ("ALJ") held a video hearing on June 7, 2006. A.R. at 657. Lewis's application was again denied following that hearing. A.R. at 19-37, 655-751. On March 30, 2007, after the Appeals

Council denied Lewis's request for appeal, the ALJ's decision that Lewis was not disabled within the meaning of the Act became final for purposes of judicial review.  A.R. at 7; 20 C.F.R. §§ 404.981, 416.1481 (2009). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Ryan v. Commr. of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla, but less than a preponderance."  Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks and citation omitted).  The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).  The

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

III.   BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy."  Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner

follows a five-step sequential evaluation process.  Tackett v. Apfel, 180

F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.   The claimant must first show that he or she is not currently engaged in substantial gainful activity.  Tackett, 180 F.3d at 1098.

2.   If not so engaged, the claimant must next show that he or she has a severe impairment.  Id.

3.   The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments").  Id.  If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.   If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here.  Id.  "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step."  Id. at 1098-1099.

5.   If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If an adjustment to other work is possible then the claimant is not disabled.  Tackett, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at

the fifth step the Commissioner bears the burden of establishing that
there is other work in significant numbers in the national economy that
the claimant can perform.  Id.  The Commissioner can meet this burden
via the testimony of a vocational expert or reference to the Medical-
Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  Id.  If the
Commissioner is unable to meet this burden then the claimant is
disabled and entitled to benefits.  Id.

IV.   <u>THE ALJ's OPINION</u>

The ALJ followed the five-step sequential evaluation process in
considering Lewis's claims.  The ALJ first found that Lewis had not
engaged in substantial gainful activity since his alleged onset date of
March 7, 2005. A.R. at 23 (Finding No. 1).

Second, the ALJ found that Lewis had the following severe
impairments: degenerative disc disease of the lumbar spine,
degenerative joint disease of the right upper extremity, tendon damage
in his left hand, osteoarthritis in his back and spine, diabetes mellitus,
hyperlipidemia, hypertension, gastroesophageal reflux disease (GERD),
hypothyroidism, an affective disorder characterized by major depression
with psychotic features of auditory hallucinations, and a personality

–6–

disorder characterized by an intermittent explosive disorder / antisocial
personality.   A.R. at 23 (Finding No. 2).

Third, the ALJ found that Lewis's impairments do not meet or
medically equal any impairment in the Listing of Impairments.  A.R. at
24 (Finding No. 3).

Fourth, the ALJ found that Lewis has the residual functional
capacity ("RFC") to:

> lift and/or carry a maximum of 20 pounds occasionally and
> 10 pounds frequently.  He can sit for about six hours in an
> eight hour workday.  He can stand and/or walk for about six
> hours in an eight hour workday.  He should alternate sitting,
> standing, and walking on a regular basis to alleviate pain
> and discomfort.  He can push and/or pull with his upper and
> lower extremities up to his lift/carry maximums on an
> occasional basis.  He can occasionally climb ramps and stairs
> but cannot climb ladders, ropes and scaffolds.  He can
> occasionally balance, stoop, crouch, kneel, and crawl.  He can
> feel on an unlimited basis.  He can reach in all directions
> except overhead with his right upper extremity, which he
> can do less than occasionally.  He can finger and handle
> frequently with his right upper extremity, but less than
> occasionally with his left upper extremity.  He has no visual
> or communicative limitations.  He should avoid concentrated
> exposure to extreme cold, unprotected heights, hazardous
> machinery, and rough, uneven, wet or slippery surfaces.  He
> should avoid even moderate exposure to vibration and
> vibratory surfaces.  His alleged mental limitations do not
> preclude him from performing the mental demands of
> competitive unskilled, routine work in terms of
> remembering, understanding, and carrying out simple

routine instructions, and responding appropriately to
supervision, co-workers and work pressures, as long as the
contact with others is limited and work pressures are
minimal. ... The residual functional capacity outlined above
is generally consistent with a limited range of light work-
related activity.

A.R. at 25-26 (Finding No. 4).

The ALJ also found that Lewis has no past relevant work.  A.R. at

35 (Finding No. 5).

Finally, at step five, the ALJ found that Lewis could perform other

jobs existing in significant numbers in the national economy, such as

cleaner/housekeeper, automatic car wash attendant, inspector and hand

packager, and surveillance system monitor.  A.R. at 36 (Finding No. 9).

Consequently, the ALJ found that Lewis was not disabled.  A.R. at 36

(Finding No. 10).

V.   PARTIES' ARGUMENTS

Lewis argues the ALJ has failed to provide "clear, specific,

legitimate, and convincing reasons" to support his rejection of the

opinions of Lewis's treating and examining doctors and medical

providers.  Plaintiff's Brief in Support of Summary Judgment (Court

Doc. 12) at 7.  Lewis argues that the ALJ's near exclusive reliance on

the opinion of a non-examining medical advisor was improper in light of

contrary opinions by his treating and examining doctors, other medical

sources, and girlfriend.  Id.

Lewis further argues that the record supports a finding that he is

disabled due to his mental impairments.  Id. at 13.  Lewis asserts that

the ALJ's conclusion at step three in the sequential evaluation, that his

impairment did not meet or equal one contained in the Listing of

Impairments is legally erroneous and not supported by substantial

evidence.  Id. at 3-4.  Lewis argues that in addition to meeting the "A"

Criteria for listing under § 12.04, affective disorder, and § 12.08,

personality disorder, he also met the "B" Criteria for listing under those

sections, and is entitled to a finding of disabled.[1]  According to Lewis,

---

[1]Under both § 12.04 and § 12.08 "[t]he required level of severity for
these disorders is met when the requirements in both A and B are
satisfied, or when the requirements in C are satisfied."  20 C.F.R. Pt.
404, Subpt. P, App. 1.  Both parties concede that the requirements of A
are satisfied.  The requirements of B are satisfied when the A criteria
result in at least two of the following: (1) Marked restriction of activities
of daily living; (2) Marked difficulties in maintaining social functioning;
(3) Marked difficulties in maintaining concentration, persistence, or
pace; or (4) Repeated episodes of decompensation, each of extended
duration."  Id.  "Marked" is defined in the regulations as "more than
moderate but less than extreme."  20 C.F.R. Pt. 404, Subpt. P, App.1, §
12.00(C).

remand would serve no useful purpose here, and the Commissioner's decision should be reversed and benefits awarded.  Id.

In response, the Commissioner argues that the ALJ reasonably weighed the opinion evidence and gave specific, legitimate reasons supported by substantial evidence for discounting those opinions asserting that Plaintiff satisfied the requirements of § 12.04 and § 12.08 of the Listing of Impairments.  Defendant's Brief in Support of Motion for Summary Judgment ("Def.'s Br.") (Court Doc. 18) at 9.

The Commissioner argues that substantial evidence supports the ALJ's findings at step three.  Id. at 2.  More specifically, while acknowledging that Lewis satisfies the "A" criteria of § 12.04 and § 12.08, the Commissioner argues that Lewis did not satisfy the "B" criteria of either § 12.04 or § 12.08.  Id. at 4.  This conclusion is based on the Commissioner's position that the ALJ reasonably relied on the testimony of the medical expert Dr. Donna Veraldi, a non-treating, non-examining physician.  Id. at 5.

The Commissioner also argues that the ALJ correctly determined that Lewis was not disabled and could perform a limited range of work and certain unskilled jobs existing in the national economy.  Id. at 14.

Finally, the Commissioner argues that if the Court does find significant legal error, the Court should remand for further administrative proceedings, rather than reversing for an award of benefits.  Id. at 15.

VII.  <u>DISCUSSION</u>

The primary issues before the Court are whether the ALJ's decision is free of legal error, and whether substantial evidence supports the decision.  Having reviewed the record, the Court concludes that the ALJ erred and that the case should be remanded to the Commissioner.

The parties agree that Plaintiff has sustained his burden with respect to steps one and two of the sequential evaluation.  Plaintiff contends, however, that he has also sustained his burden with respect to step three, and that he does meet or medically equal § 12.04 and § 12.08 of the Listings of Impairments.  Court Doc. 12 at 4.

A.   <u>ALJ's Step 3 Analysis</u>

Lewis argues that the ALJ erred in finding that he did not meet or medically equal the requirements of § 12.04 and § 12.08 of the

-11-

Listing of Impairments, more specifically the "B" criteria of those sections.  Court Doc. 12 at 11-13.  In support of his contention that he meets or medically equals these requirements, Lewis provided statements by Dr. Terry Lanes, his treating psychiatrist, that his impairments rated marked to extreme with respect to his "ability to understand, remember, and carry out instructions."  A.R. at 625.  Lewis also provided evidence from Dr. Lanes that his impairments were marked with respect to his "ability to respond appropriately to supervision, co-workers,, and work pressures in a work setting."  A.R. at 626.   Lewis asserts that this evidence "indisputably indicate[s] a man who cannot be employed on a sustained basis, and ... support[s] a determination that Mr. Lewis's mental impairments are equivalent to the §§ 12.04 and 12.08."  Court Doc. 12 at 13.

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."  <u>Batson</u>, 359 F.3d at 1195.  The regulations require that every medical opinion received, regardless of its source, be evaluated.  20 C.F.R. § 416.927(d).  "As a general rule, more weight should be given to the opinion of a treating

source than to the opinion of doctors who do not treat the claimant."
Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (internal citations
omitted).  In a similar vein, the Ninth Circuit has recently stated
"[t]hose physicians with the most significant clinical relationship with
the claimant are generally entitled to more weight than those
physicians with lesser relationships."  Carmickle v. Comm'r, Soc. Sec.
Admin., 533 F.3d 1155, 1164 (9th Cir. 2007).  Where a treating or
examining doctor's opinion is uncontradicted, the ALJ must state clear
and convincing reasons supported by substantial evidence in order to
reject the doctor's opinion. Ryan, 528 F.3d at 1198.  Even if, as here, "a
treating or examining doctor's opinion is contradicted by another
doctor's opinion, an ALJ may only reject it by providing specific and
legitimate reasons that are supported by substantial evidence." Id.

When a treating source's opinion is not given controlling weight,
the following factors are to be considered when deciding how much
weight to afford a particular medical opinion: (1) the existence of an
examining relationship; (2) the existence of a treatment relationship; (3)
the supportability of the opinion; (4) the consistency of the opinion with
the record as a whole; (5) the source's area of specialization; and (6) any

other factors which tend to support or contradict the opinion.  Id.

In determining that Lewis "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," the ALJ failed to weigh all of the evidence presented or assess the credibility of all opinions as required.  A.R. at 24-25; see also Soc. Sec. Ruling 06-03p at *6 (Aug. 8, 2006).  In support of his finding that Lewis does not meet or medically equal the requirements of §12.04 and § 12.08, the ALJ only discusses the opinions and testimony of Dr. Donna Veraldi, a non-examining, medical expert.  A.R. at 24-25.  At step three, the ALJ does not mention the opinion of Dr. Lanes that Lewis suffers marked limitations with respect to his ability to understand and remember short, simple instructions, his ability to carry out short, simple instructions, his ability to understand and remember detailed instructions, his ability to carry out detailed instructions, his ability to interact appropriately with the public, his ability to interact appropriately with supervisors, his ability to interact appropriately with co-workers, his ability to respond appropriately to work pressures in a usual work setting, and his ability to respond appropriately to changes in routine work setting.  See A.R. at 625-628,

24-25.  Thus the ALJ failed to address Plaintiff's evidence at step three
or explain why he rejected the opinions of Dr. Lanes, a treating
acceptable medical source.

    The Court recognizes that the ALJ did address the opinions of
Dr. Lanes during his analysis of Lewis's residual functional capacity
("RFC").  A.R. at 33-34.  Even if the later analysis is considered in the
context of step three considerations, however, the Court still finds the
ALJ's analysis regarding the rejection of Dr. Lanes' opinion insufficient.

    To reject the contradicted opinion of a treating medical source, the
ALJ must provide specific and legitimate reasons supported by
substantial evidence for doing so.  Ryan, 528 F.3d at 1198.  The opinion
of a non-examining physician, like Dr. Veraldi, cannot by itself
constitute substantial evidence justifying the rejection of either an
examining or treating physician's opinion.  Id. at 1202.  But, "[t]he
opinions of non-treating or non-examining physicians may serve as
substantial evidence when the opinions are consistent with independent
clinical findings or other evidence in the record."  Thomas, 278 F.3d at
957.

    As previously mentioned, the ALJ assigned little weight to the

-15-

opinion of Dr. Lanes, Lewis's treating psychiatrist, that Lewis's
impairments ranged from marked to extreme with respect to his ability
to do work-related activities.  A.R. at 33, 625-628.  These opinions were
rejected by the ALJ as "overstated" and lacking support in the record.
A.R. at 32-34.  The ALJ found that the record does not reflect the level
of dysfunction that would accompany the stated level of impairment.
A.R. at 33-34.  The ALJ found that if Dr. Lanes' conclusions were
accurate, the record would "reflect interventions, hospitalizations, and
the claimant's inability to care for himself or his son."  A.R. at 33.

In reaching the aforementioned conclusions, the ALJ relied on the
testimony of Dr. Veraldi.  A.R. at 33.  Dr. Veraldi concluded that Lewis
did not satisfy the "B" criteria of § 12.04 and § 12.08 of the Listing of
Impairments.  A.R. 688-689.  According to Dr. Veraldi, if Lewis's
impairments were marked or extreme, as indicated by Dr. Lanes, Lewis
would be so dysfunctional that he would require hospitalization or
major intervention; there would be visible response to internal stimuli,
an inability to carry on a conversation, and an inability to care for his
home or child.  A.R. 688-89.  Additionally, there would be evidence that
Lewis was so paranoid that he would not have trusted his therapists

enough to interact with them verbally.  Id. at 690-691.  There would
have been evidence of incidents where Lewis would "blow up and walk
out or stop going" to his treatment sessions, or where the therapist
would need to call in security due to Lewis's behavior.  Id.  These
opinions contradict the opinions of Dr. Lanes.  Thus, to reject Dr. Lanes'
opinions, the ALJ must provide specific and legitimate reasons
supported by substantial evidence.  The Court finds that he did not.

The evidence that Dr. Veraldi claims is missing from the record
does not appear to accurately reflect the standards established in the
guidelines.  In order to satisfy the "B" criteria of § 12.04 and § 12.08
Lewis must demonstrate at least two of the following: (1) marked
restriction of activities of daily living; (2) marked difficulties in
maintaining social functioning; (3) marked difficulties in maintaining
concentration, persistence, or pace, or (4) repeated episodes of
decompensation.  20 C.F.R. Pt. 404, Subpt. P., App. 1 at §§ 12.04, 12.08.
Episodes of decompensation are characterized by such things as
hospitalizations, interventions, loss of adaptive functioning, and
increases in treatment.  See id. at § 12.00(C)(4).  Thus, the ALJ is
seemingly requiring episodes of decompensation in order for a claimant

to meet the "B" criteria.  This is not the proper legal standard.  For this reason, remand is appropriate.

B.  <u>Weighing Opinion Evidence</u>

Lewis also raises issues regarding the ALJ's treatment of other opinion evidence.  Court Doc. 12 at 4-13.  On remand, the ALJ should reconsider this opinion evidence in light of the following discussion regarding the appropriate standards set forth in the regulations.

Opinion evidence cannot be rejected solely because it is not from an acceptable medical source.  The same factors provided in 20 C.F.R. § 416.927(d) for evaluating medical opinions from acceptable medical sources also apply when evaluating opinion evidence from other sources because "[t]hese factors represent basic principles that apply to the consideration of all opinions."  Soc. Sec. Ruling 06-03p at *4.  These factors include: the nature of the examining relationship, the nature of the treatment relationship, supportability, consistency, specialization of the source, and any other factors which tend to support or contradict the opinion.  20 C.F.R. § 416.927(d); 20 C.F.R. § 404.1527(d).  Opinions from "medical sources, who are not technically deemed 'acceptable medical sources' under [the] rules, are important and should be

evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file."  Soc. Sec.

Ruling 06-03p at *3.  The ruling continues:

> The fact that a medical opinion is from an "acceptable medical
> source" is a factor that may justify giving that opinion greater
> weight than an opinion from a medical source who is not an
> "acceptable medical source" because ... "acceptable medical
> sources" are the most qualified health care professionals.
> However, depending on the particular facts in a case, and after
> applying the factors for weighing opinion evidence, an opinion
> from a medical source who is not an 'acceptable medical source'
> may outweigh the opinion of an "acceptable medical source,"
> including the medical opinion of a treating source.

Id. at *5 (internal quotation marks and citations omitted).

The ALJ here emphasized, for example, that Ms. Keener and Ms.

Vos-Fernau are not acceptable medical sources.  A.R. at 33-34.  While

their opinions cannot establish the existence of a medically

determinable impairment, see 20 C.F.R. § 416.913(a) (only acceptable

medical sources can give such medical opinions), Ms. Keener and Ms.

Vos-Fernau's opinions still must be considered with respect to assessing

the severity of Lewis's impairments and the effect his impairments have

on his functional abilities.  Soc. Sec. Ruling 06-03p at *3.

The ALJ also rejected the opinions of Kelley Williams, Lewis's

-19-

girlfriend, in part because they were not based on "objective medical evidence."  A.R. at 34.  The ALJ must consider "all relevant evidence."  Soc. Sec. Ruling 06-03p at *6.  "Lay testimony as to a claimant's symptoms is competent evidence which the [Commissioner] must take into account, unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks and citation omitted).

The ALJ rejected Ms. Williams' opinions because she is not an acceptable medical source.  See A.R. at 319-327.  But the regulations specifically contemplate the evaluation of evidence from non-medical sources such as spouses, parents and other care givers, siblings, other relatives, friends, and neighbors, to "show the severity of [the claimant's] impairment(s) and how [the impairment] affects the [claimant's] ability to work.  20 C.F.R. § 416.913(d).  Ms. Williams' opinions reflect her observations of Lewis and how he functions at home.  A.R. at 319-327.  That her opinions are not based on objective medical evidence is expected.  The regulations contemplate that her opinions would not be based on such evidence.  See 20 C.F.R. §

416.913(d).   Soc. Sec. Ruling 06-03p at *6 states:

> In considering evidence from 'non-medical sources' who have not
> seen the [claimant] in a professional capacity in connection with
> their impairments, such as spouses, parents, friends, and
> neighbors, it would be appropriate to consider such factors as the
> nature and extent of the relationship, whether the evidence is
> consistent with other evidence, and any other factors that tend to
> support or refute the evidence.

On remand, the ALJ should reconsider the evidence offered by
nonmedical sources in light of these regulations.

## VII.   CONCLUSION

Based on the foregoing, the Court finds that there is not
substantial evidence in the record to support the ALJ's decision.  The
Court further finds that the ALJ's decision is based on legal error.
Therefore,

IT IS RECOMMENDED that the Commissioner's decision
denying SSI be reversed and the case be remanded for further
administrative proceedings in accordance with these findings and
recommendations.  The Commissioner's motion for summary judgment
(Court Doc. 17) should be DENIED in part and GRANTED in part, and
that Plaintiff's motion for summary judgment (Court Doc. 10) should be
DENIED in part and GRANTED in part.  The Commissioner's motion

should be denied to the extent that it requests the ALJ's decision be affirmed, but it should be granted to the extent that it requests the case be remanded for further administrative proceedings.  Lewis's motion should be granted to the extent that it requests the ALJ's decision be reversed, but denied to the extent that it requests the Court to award benefits.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 1st day of February, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge